| | |
|---|---|
| IN THE UNITED STATES DISTRICT COURT | |
| FOR THE NORTHERN DISTRICT OF CALIFORNIA | |

NAPOLEON SANDEFORD,

Plaintiff,

v.

CHARLES PLUMMER, et al.,

Defendants.

No. C 06-06794 SBA (PR)

**ORDER OF PARTIAL DISMISSAL, SERVING DUE PROCESS CLAIM, AND DISMISSING REMAINING CLAIMS WITH LEAVE TO AMEND**

## INTRODUCTION

Plaintiff, a federal prisoner currently housed at the United States Penitentiary in Leavenworth, Kansas, has initiated this action by filing two pro se civil rights complaint forms, alleging constitutional violations that occurred when he was incarcerated at the Glenn E. Dyer Detention Facility in Oakland from April 25, 2005 to February 2, 2006. He has also filed an application for leave to proceed in forma pauperis.

Venue is proper in this district because the events giving rise to the action occurred in this judicial district. See 28 U.S.C. § 1391(b).

## BACKGROUND

Both civil rights complaint forms were sent by Plaintiff to the Court in one envelope; therefore, the Clerk of the Court filed both together as a single civil rights complaint (docket no. 1) when this action was opened. Plaintiff did not sign the complaint forms as required by Rule 11(a) of the Federal Rules of Civil Procedure; however, attached to each complaint form is a type-written document entitled "Civil Rights Complaint Supporting Facts," which Plaintiff signed on October 23, 2006. Because Plaintiff is proceeding pro se, the Court finds that Plaintiff has met the requirements of Rule 11(a) and it now conducts an initial review of both complaint forms.

In the first complaint form, Plaintiff names as Defendants: Sheriff Charles Plummer, the United States Marshals Service, the Alameda County Sheriff's Office, Officer Hal Morrison, Sergeant S. Wolf and Doe Defendants. Plaintiff claims that Defendant Morrison denied him "an important due process right in the disciplinary process" stemming from a December 31, 2005

incident by sanctioning him with a thirty-day loss of privileges without a disciplinary hearing. Plaintiff seeks $100,000 in compensatory damages and $100,000 in punitive damages.[1]

In the second complaint form, Plaintiff names the same Defendants as the first complaint form above, but excludes Defendants Morrison and Wolf. Plaintiff claims that Defendants violated his right to free exercise of religion and equal protection. He seeks $100,000 in compensatory damages.

## DISCUSSION

**I.  Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

Title 28 U.S.C. § 1915(d) authorizes federal courts to dismiss a claim filed in forma pauperis prior to service "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." Under this standard, a district court may review the complaint and dismiss sua sponte those claims premised on meritless legal theories or that clearly lack any factual basis. Denton v. Hernandez, 504 U.S. 25, 31-32 (1992). Pro se pleadings must be liberally construed, however. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Here, Plaintiff filed his two complaint forms pursuant to Bivens v. Six Unknown Agents, 403 U.S. 388 (1971). However, liberally construing Plaintiff's claims, the Court will address his claims against the United States Marshals Service under Bivens, and the claims against Defendants who are not federal actors under 42 U.S.C. § 1983.

---

[1] The Court notes that Plaintiff initially requested $10,000 in his complaint form; however, in the attached type-written document entitled "Civil Rights Complaint Supporting Facts," he revises it to $100,000 in compensatory damages. He also states that he requests "$100.000 in punitive damages," which the Court construes as $100,000.

2

### A. *Bivens* Standard

To state a private cause of action under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and its progeny, plaintiff must allege: (1) the violation of a right secured by the Constitution of the United States, and (2) that the alleged deprivation was committed by a federal actor. See Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (§ 1983 and Bivens actions are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens). When reviewing a Bivens action for which there is no case on point, therefore, § 1983 cases are applied by analogy. See, e.g., Butz v. Economou, 438 U.S. 478, 504 (1978) (no distinctions for purposes of immunity between state officials sued under § 1983 and federal officials sued under Bivens); Van Strum v. Lawn, 940 F.2d at 409 (same statute of limitation should be used for § 1983 actions as for Bivens actions).

As a threshold matter the Court notes that the United States Marshals Service is a federal actor. The only allegation in the complaint relating to the United States Marshals Service is their "failure to ensure adequate training of personell [sic] at a contracted facility, and failure to provide adequate oversight." The Court notes the United States Marshals Service's sole involvement was transporting Plaintiff to the Glenn E. Dyer Detention Facility, where the alleged constitutional violations occurred. However, prisoners have no constitutional right to incarceration in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983). A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. See Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985); Stewart v. McManus, 924 F.2d 138 (8th Cir. 1991) (no due process rights implicated in transfer from state to federal prison). A non-consensual transfer is not per se violative of either due process or equal protection rights, see Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Stinson v. Nelson, 525 F.2d 728, 730 (9th Cir. 1975), and no due process protections such as notice or a hearing need be afforded before a prisoner is transferred, even if the transfer is for disciplinary reasons or to a considerably less favorable institution, see Montanye v. Haymes, 427 U.S. 236, 242 (1976). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S.

3

24, 39 (2002). Plaintiff's allegations against the United States Marshals Service, therefore, fail to state a cognizable claim under Bivens. Accordingly, Plaintiff's claims against the United States Marshals Service are DISMISSED.

### B. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Terracom v. Valley National Bank, 49 F.3d 555, 558 (9th Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II. Legal Claims

### A. Due Process Claim

Plaintiff contends that on December 31, 2005, Defendant Morrison gave him an incident report for a verbal altercation that had taken place earlier in the day. After receiving the incident report, Plaintiff claims that he requested to be allowed to call three inmates as witnesses. Plaintiff alleges that at no time did he waive his rights to a formal disciplinary hearing. He claims that no disciplinary hearing was ever held, and that Defendant Morrison denied him the "opportunity to speak on [his] own behalf, or to defend [himself] against any allegations." Based on the incident report filed by Defendant Morrison, Plaintiff was sanctioned with a thirty-day loss of privileges. Plaintiff filed an appeal and was later absolved of the allegations and his privileges were restored.

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Thus, although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, the Due Process Clause requires certain minimum procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance." See Sandin v. Conner, 515 U.S. 472, 477-87 (1995); Wolff, 418 U.S. at 556-57, 571-72 n.19.

4

California's regulations concerning discipline provide explicit standards that narrowly fetter official discretion. See CAL. CODE REGS. tit. 15, § 3320(l) (requiring guilt to be proven by preponderance of evidence standard); § 3320(a) (requiring notice); § 3320(b) (requiring hearing); Walker v. Sumner, 14 F.3d 1415, 1419 (9th Cir. 1994) (finding Nevada regulations, which are similar to California's, create liberty interest).

Wolff established five procedural requirements for prison disciplinary hearings implicating the Due Process Clause. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566; see also Bartholomew v. Watson, 665 F.2d 915, 917-18 (9th Cir. 1982) (right to call witnesses is basic to fair hearing and decisions to preclude should be on case by case analysis of potential hazards of calling particular person). Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 570.

Here, Plaintiff alleges that Defendant Morrison failed to provide him a hearing prior to taking away his privileges on January 7, 2006. Specifically, Plaintiff alleges that "[a]t no time did [he] waive [his] rights to a hearing, yet there was no formal hearing, however, [he] received an incident report and sanctions," including a thirty-day loss of privileges. He claims that on January 8, 2006, his family came to visit him, but he was denied visits. On January 11, 2007, the record shows that Plaintiff filed a grievance at the jail. The grievance response states that Plaintiff "received 30-

days loss-of-privileges that started January 7, 2006 without receiving a hearing which caused [him] to miss visiting on January 8, 2006." It further states, "Because [he] received loss-of-privileges without due process, [his] privileges were restored effective January 11, 2006." Plaintiff claims that because he was unaware that he had lost his visiting privilege, he was not able to reschedule two family visits that weekend. Therefore, he was not able "to plan and to resolve issues regarding the disposal of personal and community property and the payment of outstanding debts, as well as mortgage payments for property." Liberally construed, Plaintiff's allegations present a cognizable claim for the denial of due process against Defendant Morrison.

### B. Free Exercise Claim

Plaintiff alleges that the jail staff, who he names as Defendant Alameda County Sheriff's Office, violated his right to free exercise of religion. Specifically, he contends that they failed to grant his request for an "Islamic Diet," access to Islamic religious services, and permission to wear a Kufi cap.[2] Plaintiff also alleges that during Ramadan they failed to deliver meals prior to sunrise, in accordance with Ramadan custom, and denied him "Eid," a final meal that "culminates and signifies the end of the holy month." Finally, he alleges that the jail staff sent a memo stating that the Ramadan celebration had ended; however, he claims this was a few days before it officially ended.

The First Amendment protects unfamiliar and idiosyncratic as well as commonly recognized religions. See Alvarado v. City of San Jose, 94 F.3d 1223, 1230 (9th Cir. 1996). An inmate who adheres to a minority religion must be afforded a "reasonable opportunity" to exercise his religious freedom. See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972). In order to establish a free exercise violation, a prisoner must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Id. at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th

---

[2] A Kufi cap is a Muslim prayer cap.

Cir. 1987)). Liberally construed, Plaintiff's allegations state a cognizable claim for the denial of the right to free exercise of his religion.

Plaintiff must name individual members of the Alameda County Sheriff's Office and link them to his claim by explaining what each defendant did that caused a violation of his constitutional rights. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). Accordingly, Plaintiff's free exercise claim is DISMISSED WITH LEAVE TO AMEND his complaint to cure this pleading deficiency.

### C. Equal Protection

Plaintiff claims that his rights under the Equal Protection Clause were violated because jail staff denied a request that "[he] and other Muslim inmates be allowed to wear approved head dress [sic] (Kufi) caps, where similar head dress [sic] was allowed by staff for Jewish inmates."

The Equal Protection Clause ensures that prison officials cannot discriminate against particular religions. Freeman, 125 F.3d at 737. Plaintiff has the burden to show that officials intentionally acted in a discriminatory manner to support a § 1983 claim. FDIC v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir. 1991) (stating that discriminatory intent can sometimes be inferred by the mere fact of different treatment). The Ninth Circuit in Sischo-Nownejad stated:

> The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a prima facie case is "very little." Normally, when such evidence has been introduced, a court should not grant summary judgment to the defendant on any ground relating to the merits. Even if the defendant articulates a legitimate, nondiscriminatory reason for the challenged . . . decision, thus shifting the burden to the plaintiff to prove that the articulated reason is pretextual, summary judgment is normally inappropriate. When a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the [defendant's] articulated reason for its . . . decision. Specifically, in evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facie case.

934 F.2d at 1110 (internal quotation marks and citations omitted).

7

Liberally construed, Plaintiff's allegations support a claim for religious discrimination in violation of his equal protection rights. However, similar to his free exercise claim, Plaintiff must name individual members of the Alameda County Sheriff's Office and link them to his equal protection claim by explaining what each defendant did that caused a violation of his constitutional rights. See Leer, 844 F.2d at 634. Accordingly, Plaintiff's equal protection claim is DISMISSED WITH LEAVE TO AMEND his complaint to cure this pleading deficiency.

### III. Defendants

#### A. Named Defendants

Plaintiff has named Defendant Officer Hal Morrison and directly linked Defendant Morrison to his allegations. Accordingly, the Court will order service of the complaint on this Defendant.

#### B. Doe Defendants

In his complaint forms, Plaintiff identifies Doe Defendants, whose names he intends to learn through discovery. The use of Doe Defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, the aforementioned claims against the Doe Defendants are DISMISSED from this action without prejudice. Should Plaintiff learn their identities, he may move to file an amended complaint to add them as named defendants. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

#### C. Supervisory Defendants

Plaintiff names Defendant Sergeant S. Wolf under his due process claim, by stating:

As a result of Officer Morrison filing an incident report and subsequent action by Sergeant Wolf, without my being informed of the hearing or having an opportunity to speak on my own behalf, or to defend my self [sic] against any allegations . . . I was denied an important due process right in the disciplinary process.

Plaintiff has attached the Disciplinary Report dated December 31, 2005, which is at issue in his due process claim. The Court notes that the record shows that Defendant Morrison reported the verbal altercation involving Plaintiff to Sergeant Wolf. While Plaintiff claims that there was "subsequent action by Sergeant Wolf," he does not allege facts demonstrating that Defendant Wolf violated his federal rights, but seems to claim Defendant Wolf is liable based on the conduct of Defendant Morrison. If Defendant Wolf is being sued in his supervisory capacity, Plaintiff must allege facts from which it could be established that Defendant Wolf was involved personally in the alleged constitutional violation, or that there was a sufficient causal connection between wrongful conduct by Defendant Wolf and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). Sweeping conclusory allegations will not suffice; Plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights. Leer, 844 F.2d at 634.

Plaintiff also states that he is suing Defendant Plummer in his supervisory capacity because of Defendant Plummer's "failure to direct or instruct his staff and subordinates in proper procedures regarding due process fifth amend[ment] violations" and his "failure to direct or to instruct his staff and subordinates concerning religious practices. . . ." He does not allege facts demonstrating that Defendant Plummer violated his federal rights, but seems to claim Defendant Plummer is liable based on the conduct of his subordinates. There is, however, no respondeat superior liability under § 1983 solely because a defendant is responsible for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id. A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman, 942 F.2d at 1446.

9

Plaintiff's claims against Defendants Wolf and Plummer are therefore DISMISSED WITH LEAVE TO AMEND. Plaintiff may file an amendment to his complaint that alleges supervisory liability of Defendants Wolf and Plummer under the standards explained above.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Leave to proceed <u>in forma pauperis</u> is GRANTED (docket no. 5).

2. Plaintiff's claims against the United States Marshals Service under <u>Bivens</u> are DISMISSED.

3. The Court finds that Plaintiff has stated a COGNIZABLE due process claim against Defendant Officer Hal Morrison.

4. Plaintiff's religious freedom claim against Defendant Alameda County Sheriff's Office is DISMISSED WITH LEAVE TO AMEND.

5. Plaintiff's equal protection claim against Defendant Alameda County Sheriff's Office is DISMISSED WITH LEAVE TO AMEND.

6. Plaintiff's claims against the Doe Defendants are DISMISSED WITHOUT PREJUDICE.

7. Plaintiff's claims against Defendants Wolf and Plummer in their supervisory capacity are DISMISSED WITH LEAVE TO AMEND.

8. Within **thirty (30) days** of the date of this Order, Plaintiff may file an amendment to the complaint as set forth above. Plaintiff shall resubmit **only** those claims that were dismissed with leave to amend and not the entire complaint. He must use the attached civil rights form, write the case number for this action on the form (C 06-06794 SBA (PR)), clearly label the complaint "Amendment to the Complaint," and complete all sections of the form. The failure to do so within the thirty-day deadline will result in the dismissal without prejudice of Plaintiff's religious freedom claim and equal protection claim against Defendant Alameda County Sheriff's Office, as well as his claims against Defendants Wolf and Plummer in their supervisory capacity.

9. The Clerk of the Court shall issue summons and the United States Marshal shall serve **Officer Hal Morrison** at the Glenn E. Dyer Detention Facility copies of: (1) the complaint as well as copies of all attachments thereto (docket no. 1) and (2) a copy of this Order. The Clerk of the Court shall also mail a courtesy copy of the complaint and a copy of this Order to the Alameda County Counsel's Office. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

10. In order to expedite the resolution of this case, the Court orders as follows:

   a. Defendant shall answer the complaint in accordance with the Federal Rules of Civil Procedure. In addition, no later than **thirty (30) days** from the date his answer is due, Defendant shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date his summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

   b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **thirty (30) days** after the date on which Defendant's motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

   > The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
   >
   > Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If

11

> summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendant's declarations, Defendant's version may be taken as true and the case may be decided in Defendant's favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

    c.    If Defendant wishes to file a reply brief, he shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

    d.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

11.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendant to depose Plaintiff and any other necessary witnesses confined in prison.

12.    All communications by Plaintiff with the Court must be served on Defendant, or his counsel once counsel has been designated, by mailing a true copy of the document to Defendant or his counsel.

13.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

14. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making the motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

15. The Clerk of the Court shall send Plaintiff a blank civil rights form along with a copy of this Order.

IT IS SO ORDERED.

DATED: 12/18/07

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

NAPOLEON SANDEFORD,

        Plaintiff,

v.

CHARLES PLUMMER et al,

        Defendant.
_____/

Case Number: CV06-06794 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 21, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Napoleon Sandeford 97606-011
United States Penitentiary (USP) in Leavenworth
P.O. Box 1000
Leavenworth, KS 66048

P:\PRO-SE\SBA\CR.06\Sandeford6794.Service+DWLA.wpd

Dated: December 21, 2007

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk