**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAPOLEON SANDEFORD,<br><br>    Plaintiff,<br><br>  v.<br><br>CHARLES PLUMMER, et al.,<br><br>    Defendants.                        / | No. C 06-06794 SBA (PR)<br><br>**ORDER REVIEWING AMENDMENT TO THE COMPLAINT; ORDERING SERVICE OF COGNIZABLE CLAIMS; DISMISSING NON-COGNIZABLE CLAIMS; AND ADDRESSING PENDING MOTIONS** |

       On December 18, 2007, the Court issued an "Order of Partial Dismissal, Serving Due Process Claim, and Dismissing Remaining Claims with Leave to Amend." The Court found that Plaintiff's allegations against the United States Marshals Service failed to state a cognizable claim under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), and dismissed that claim. The Court determined that Plaintiff's allegations presented a cognizable claim for the denial of due process against Defendant Morrison stemming from a December 31, 2005 write up resulting in a thirty-day loss of privileges without a disciplinary hearing, and served Defendant Morrison with a summons and complaint. All claims against any Doe Defendants were dismissed from this action without prejudice. Finally, Plaintiff was directed to amend his religious freedom, supervisory liability and equal protection claims by filing an amendment to the complaint. He was warned the failure to do so would result in dismissal of the aforementioned claims without prejudice.

       On January 25, 2008, Plaintiff filed his amendment to the complaint.

       On August 5, 2008, Defendant Morrison filed a motion for summary judgment.

       In an Order dated February 25, 2009, the Court granted summary judgment as to all claims against Defendant Morrison, including (1) Plaintiff's first set of claims stemming from Defendant Morrison's failing to give him notice that he would receive an incident report, and denying him the right to a hearing and his right to call witnesses to that hearing; and (2) Plaintiff's second set of

claims stemming from his allegations that Defendant Morrison tried to make him eat a meal that was unfit according to his Sunni Muslim religion.[1]

The Court now reviews Plaintiff's remaining amended religious freedom, supervisory liability and equal protection claims.[2]

### I. Claims Against Defendants Alameda County Sheriff's Office and Sheriff Charles Plummer

In its December 18, 2007 Order, the Court gave the following background for Plaintiff's religious freedom claim:

> Plaintiff alleges that the jail staff, who he names as Defendant Alameda County Sheriff's Office, violated his right to free exercise of religion. Specifically, he contends that they failed to grant his request for an "Islamic Diet," access to Islamic religious

---

[1] In his amendment to the complaint, Plaintiff attempts to amend his claims against Defendant Morrison; however, the Court has already found that Defendant Morrison is entitled to summary judgment on all claims. Therefore, the Court need not address Plaintiff's amended claims against Defendant Morrison. In addition, Plaintiff names "L.T.C. Kennedy" as a Defendant based on the fact that Defendant Kennedy denied a grievance involving Defendant Morrison. (Am. to Compl. at 3.) First, Plaintiff was not granted leave to amend his complaint to add new claims against Defendant Kennedy. Second, even if he was granted leave to do so, the Court notes that although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action. See Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance"). Plaintiff has therefore failed to state a claim against Defendant Kennedy. Accordingly, the Court need not address Plaintiff's new claims against Defendant Kennedy.

[2] The Court will not consider any of Plaintiff's allegations against newly-named Defendants Ditzenberger, Beachamp and McCarthy because he was not granted leave to amend his complaint to add new claims against these Defendants. Even if he was granted leave to do so, Plaintiff alleges that these Defendants were either involved in the denial of his due process rights stemming from a hearing on a July 11, 2005 write up "for failure to follow instructions rules and disrespect" or in the denial of his grievances in February, 2006. (Am. to Compl. at 3-4.) The Court again notes that there is no right to a response to grievances or to any particular action. See Flick, 932 F.2d at 728. Plaintiff adds that he requests "a declaratory judgment" against these Defendants based on the "physical abuse of Plaintiff" based on a violation of his rights "under the Eighth Amendment." (Am. to Compl. at 6.) However, Plaintiff makes a conclusory allegation without any factual basis to support an Eighth Amendment violation. Plaintiff also requests compensatory and punitive damages against these defendants "for the physical and emotional injuries sustained as a result of . . . [his] deniel [sic] of religious right, and due process of hearing procedure." (Id.) Plaintiff has not stated any allegations in his amendment that link these Defendants to his religious freedom claim. Furthermore, as mentioned above, Plaintiff's original complaint contained a due process claim against Defendant Morrison stemming from a hearing on a December 31, 2005 write up. Any new claims dealing with the denial of due process stemming from a hearing on a July 11, 2005 write up should be raised in a new civil rights action. Therefore, such claims against Defendants Ditzenberger, Beachamp and McCarthy should be raised in a new civil rights action.

2

> services, and permission to wear a Kufi cap.[3] Plaintiff also alleges that during Ramadan they failed to deliver meals prior to sunrise, in accordance with Ramadan custom, and denied him "Eid," a final meal that "culminates and signifies the end of the holy month." Finally, he alleges that the jail staff sent a memo stating that the Ramadan celebration had ended; however, he claims this was a few days before it officially ended.

(Dec. 18, 2007 Order at 6 (footnote in original).) The Court also gave the following background on his equal protection claim: "Plaintiff claims that his rights under the Equal Protection Clause were violated because jail staff denied a request that "[he] and other Muslim inmates be allowed to wear approved head dress [sic] (Kufi) caps, where similar head dress [sic] was allowed by staff for Jewish inmates." (Id. at 7.)

The Court determined that, liberally construed, Plaintiff's allegations stated a cognizable claim for the denial of the right to free exercise of his religion. (Id. at 7.) Liberally construed, the Court also determined that Plaintiff's allegations support a claim for religious discrimination in violation of his equal protection rights. However, the Court directed Plaintiff to name individual members of the Alameda County Sheriff's Office and link them to his religious freedom and equal protection claims by explaining what each defendant did that caused a violation of his constitutional rights. (Id. (citing Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right)).) Accordingly, the aforementioned claims were dismissed with leave to amend his complaint to cure the pleading deficiencies.

The First Amendment protects unfamiliar and idiosyncratic as well as commonly recognized religions. See Alvarado v. City of San Jose, 94 F.3d 1223, 1230 (9th Cir. 1996). An inmate who adheres to a minority religion must be afforded a "reasonable opportunity" to exercise his religious freedom. See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972). In order to establish a free exercise violation, a prisoner must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). To reach

---

[3] A Kufi cap is a Muslim prayer cap.

3

the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987) aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680 (1989)).

The Equal Protection Clause ensures that prison officials cannot discriminate against particular religions. Freeman, 125 F.3d at 737. Plaintiff has the burden to show that officials intentionally acted in a discriminatory manner to support a § 1983 claim. FDIC v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir. 1991) (stating that discriminatory intent can sometimes be inferred by the mere fact of different treatment) overruled on other grounds by Dominguez-Curry v. Nevada Trans. Dist., 424 F.3d 1027 (9th Cir. 2005). The Ninth Circuit in Sischo-Nownejad stated:

> The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a prima facie case is "very little." Normally, when such evidence has been introduced, a court should not grant summary judgment to the defendant on any ground relating to the merits. Even if the defendant articulates a legitimate, nondiscriminatory reason for the challenged . . . decision, thus shifting the burden to the plaintiff to prove that the articulated reason is pretextual, summary judgment is normally inappropriate. When a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the [defendant's] articulated reason for its . . . decision. Specifically, in evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facie case.

934 F.2d at 1110 (internal quotation marks and citations omitted).

In Plaintiff's amendment to the complaint, he alleges that Defendant Alameda County Sheriff's Department failed to grant his request for an "Islamic Diet" as well as access to Islamic religious services:

> On April 25, 2005, plaintiff Sandeford contacted the medical staff at "Glendyer" North Couty jail "Alameda County Sheriff's Department and spoke to those in charge of the "diet meals." The doctor in charge placed me on a[n] "Islamic diet" because [of] the particular status of my faith, which is a Sunni Muslim. The Sheriff's Department denied my [Muslim] diet, based upon reason[s] not substantiated by their own policy. Although, officials informed me that Aramark Corporation does not serve Muslim diets[,] Aramark is one of the largest catering companys [sic] in the bay area. Also, plaintiff Sandeford requested to participate in Islamic services, which the Sheriff's dept. denied, due to in adequate [sic] service established with the Sheriff's department.

4

(Am. to Compl. at 1.)  Plaintiff then claims that "after denial of [his] request," presumably for his request for a Muslim diet and to participate in Islamic services, he "proceeded with filing his 'grievance' with the County Sheriff's office."  (Id.)  The attached "Inmate Grievance Response" dated May 15, 2005, which relates to these issues, states that his grievance was "DENIED."  (May 15, 2005 Inmate Grievance Response.)

Plaintiff also states that during Ramadan, Defendant Alameda County Sheriff's Department failed to deliver meals prior to sunrise, in accordance with Ramadan custom.  He also includes his equal protection claim that he was denied permission to wear a Kufi cap, while permitting other religious groups to keep and use head coverings:

> On July 10, 2005, plaintiff Sandeford requested assistance towards participating in the commencement of fasting during the month of Ramadan.  Plaintiff made his's [sic] request sixty days in advanced [sic] prior to the actual date of the fasting.  Plaintiff Sandeford, respectfully argues that, program statement 4761.04, concerning (special meals) for the month of Ramadan observance, gives county officials the right to prepare for inmates participation in the Islamic fasting month of Ramadan, it's clear that the Sheriff's department clearly violated their own program statement, and plaintiff Sandeford constitutional rights of due process, and prejudice him, toward the humiliation and disregard of his belief and practice as an incarcerated inmate at the Alameda County Sheriff's Detention.  Plaintiff Sandeford continue[d] to witness prejudice from the Alameda County Sheriff's official based upon a request plaintiff Sandeford made in regard to approval to wear an Islamic head gear, which is called a (kufi).  According to program statement 548.14, plaintiff Sandeford was denied authorization to wear his's [sic] religious head gear, despite the fact other religious groups were approved to wear head gear.

(Am. to Compl. at 2.)  Finally, Plaintiff states that he "requested counseling by a spiritual leader or chaplain, which was not available, because the Alameda [County] Sheriff['s] department has failed to contact religious leaders to participate in Islamic services, for the Muslims weekly Friday Islamic service."  (Id. at 5.)  The attached "Inmate Grievance Response" dated July 15, 2005 relates to these issues.  It states that his grievance was denied as to the portion of his grievance relating to the Ramadan meals because, "Inmates are served the appropriate meals needed for their dietary needs during the observance of Ramadan."  (July 15, 2005 Inmate Grievance Response.)  It also states that the portion of Plaintiff's grievance that related to his equal protection claims stemming from his request for a Kufi cap was denied stating, "Due to security concerns, inmates are not given beads,

5

oils or headgear." (Id.) In regards to Plaintiff being denied Muslim services, that portion of the grievance was "affirmed." The grievance stated, "it has been almost impossible to attain an [i]mam[4] who is willing to perform Muslims [sic] services at the jail." (Id. (footnote added).) However, Plaintiff was informed that if he knew of "any certified [i]mams that [were] willing to become a volunteer for the incarcerated inmates," then Plaintiff should direct the imam to contact Inmate Services. (Id.)

In order to correct the deficiencies in his original complaint, Plaintiff again names Defendant Alameda County Sheriff Charles Plummer as another Defendant linked to his religious freedom and equal protection claims: "The records that have been established by Plaintiff Sandeford, will reflect upon the discrimination towards the belief and practice for incarcerated Muslim in the Alameda County Detention, due to Sheriff Charles Plummer authority." (Am. to Compl. at 5.) In his original complaint, Plaintiff sued Defendant Plummer in his supervisory capacity because of Defendant Plummer's "'failure to direct or instruct his staff and subordinates in proper procedures regarding due process fifth amend[ment] violations' and his 'failure to direct or to instruct his staff and subordinates concerning religious practices. . . .'" (Dec. 18, 2007 Order at 9.) The Court directed Plaintiff to amend his supervisory liability claim against Defendant Plummer, stating:

> [Plaintiff] does not allege facts demonstrating that Defendant Plummer violated his federal rights, but seems to claim Defendant Plummer is liable based on the conduct of his subordinates. There is, however, no respondeat superior liability under § 1983 solely because a defendant is responsible for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id. A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman, 942 F.2d at 1446.[5]

---

[4] Similar to spiritual leaders, the imam is the one who leads the prayer during Islamic gatherings.

[5] Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and internal quotations omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825, 834 (1994).

6

(Id. (footnote added).)

As mentioned above, Plaintiff has continued to name the Alameda County Sheriff's Department and Sheriff Plummer as Defendants in this action. Local and municipal governments and their entities are "persons" subject to liability under 42 U.S.C. § 1983, but only where official policy or custom causes a constitutional tort, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). A local government may also be liable for constitutional violations resulting from its failure to supervise, monitor or train, where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

Liberally construed, the allegations of the amendment to the complaint state a claim for relief under § 1983 against Defendant Alameda County Sheriff's Department as a municipal entity that promulgated an official policy or custom or failed to train/supervise its employees, with such action or inaction causing a violation of Plaintiff's rights to religious freedom and equal protection. The amendment to the complaint also adequately pleads similar claims for relief under § 1983 against Defendant Plummer.

## II.    Supervisory Liability Claim Against Defendant Wolf

In its December 18, 2007 Order, the Court gave the following background relating to Plaintiff's claim against Defendant Wolf stemming from the due process claim:

> As a result of Officer Morrison filing an incident report and subsequent action by Sergeant Wolf, without my being informed of the hearing or having an opportunity to speak on my own behalf, or to defend my self [sic] against any allegations . . . I was denied an important due process right in the disciplinary process.

(Dec. 18, 2007 Order at 8.) However, the Court dismissed with leave to amend Plaintiff's supervisory liability claims against Defendant Wolf, stating:

> Plaintiff has attached the Disciplinary Report dated December 31, 2005, which is at issue in his due process claim. The Court notes that the record shows that Defendant Morrison reported the verbal altercation involving Plaintiff to Sergeant Wolf. While Plaintiff claims that there was "subsequent action by Sergeant Wolf," he does not allege facts demonstrating that Defendant Wolf violated his federal rights, but seems

> to claim Defendant Wolf is liable based on the conduct of Defendant Morrison. If Defendant Wolf is being sued in his supervisory capacity, Plaintiff must allege facts from which it could be established that Defendant Wolf was involved personally in the alleged constitutional violation, or that there was a sufficient causal connection between wrongful conduct by Defendant Wolf and the constitutional violation.

(Id. at 9.) Thus, the Court directed Plaintiff to reassert his supervisory liability claims against Defendant Wolf if he can in good faith allege facts establishing a basis for supervisory liability. Plaintiff has failed to do so in his amendment to the complaint. Furthermore, as mentioned above, since Plaintiff filed his amendment the Court has determined that Defendant Morrison is entitled to summary judgment on all claims against him. Thus, Defendant Wolf can no longer be held liable based on the conduct of Defendant Morrison. Therefore, Plaintiff's supervisory liability claim against Defendant Wolf is dismissed without further leave to amend.

### III.  Plaintiff's Pending Motions

Before the Court is Plaintiff's "Motion for Summary Judgment" (docket no. 40). Plaintiff requests that this Court enter a default judgment against Defendants because they have not yet answered the claims in the amendment to his complaint and thus he is entitled to a default judgment. However, a default judgment cannot be entered unless the Clerk of the Court first enters a default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. No such default has been requested or entered in this case. Accordingly, Plaintiff's motion, which is construed as a motion for a default judgment, is DENIED.

Also before the Court is Plaintiff's "Motion for Extension of Time to File Response and to Find Attorney" (docket no. 42), which is construed as his second request for appointment of counsel. Plaintiff's first request for appointment of counsel was denied in an Order dated May 19, 2009. At this time, the Court is still unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a pro bono appointment. It is premature for the Court to determine Plaintiff's likelihood of success on the merits. Moreover, Plaintiff has been able to articulate his claims adequately pro se in light of the complexity of the issues involved. See Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004). Accordingly, his second request for appointment of counsel at this time is DENIED. This

8

does not mean, however, that the Court will not consider appointment of counsel at a later juncture in the proceedings, that is, after the remaining Defendants have filed their dispositive motion and the Court has a better understanding of the procedural and substantive matters at issue.  Therefore, Plaintiff may file a renewed motion for the appointment of counsel after the remaining Defendants' dispositive motion has been filed.  If the Court decides that appointment of counsel is warranted at that time, then it can seek volunteer counsel to agree to represent Plaintiff pro bono.

## **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. The Court finds COGNIZABLE Plaintiff's religious freedom and equal protection claims against Defendant Alameda County Sheriff's Department (municipal defendant) and Defendant Plummer (supervisory defendant).

2. Plaintiff's supervisory liability claim against Defendant Wolf is dismissed without further leave to amend.

3. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the original complaint (docket no. 1) in this matter, and a copy of this Order upon: **Alameda County Sheriff's Department and Alameda County Sheriff Charles Plummer**.  The Clerk shall also mail copies of these documents to the Alameda County Counsel's Office.  Additionally, the Clerk shall serve a copy of this Order on Plaintiff.

5. In order to expedite the resolution of this case, the Court orders as follows:

   a. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  In addition, no later than **thirty (30) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date their summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **forty-five (45) days** after the date on which Defendants' motion is filed.  The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The Defendant has made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the Defendants's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted [in favor of the Defendant], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).  Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion.  Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration.  Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may be decided in Defendants' favor without a trial.  Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c.      If Defendants wish to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

d.      The motion shall be deemed submitted as of the date the reply brief is due.

1  No hearing will be held on the motion unless the Court so orders at a later date.

2        6.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure.
Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

      7.     All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

      8.     It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

      9.     Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

      10.    Plaintiff's "Motion for Summary Judgment" (docket no. 40), which is construed as a motion for a default judgment, is DENIED.

      11.    Plaintiff's "Motion for Extension of Time to File Response and to Find Attorney" (docket no. 42), which is construed as his second request for appointment of counsel, is DENIED.

IT IS SO ORDERED.

DATED: 8/31/09

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.06\Sandeford6794.serve-AmdClaims.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

NAPOLEON SANDEFORD,

    Plaintiff,

v.

CHARLES PLUMMER et al,

    Defendant.

Case Number: CV06-06794 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 1, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Napoleon Sandeford 97606-011
United States Penitentiary (USP)
Cornell Corrections
111 Taylor Street
San Francisco, CA 94102

Dated: September 1, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.06\Sandeford6794.serve-AmClaims.wpd 12