IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAPOLEON SANDEFORD, | No. C 06-06794 SBA (PR) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| v. | |
| CHARLES PLUMMER, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Napoleon Sandeford, a federal prisoner currently incarcerated at the Federal Correctional Institution in Dublin, California, filed this pro se civil rights action under 42 U.S.C. § 1983 against Defendants, alleging violations of his constitutional rights that occurred while he was housed at the Glenn E. Dyer Detention Facility (GDDF) from April 25, 2005 to February 2, 2006.

In an Order dated December 18, 2007, the Court found that Plaintiff stated cognizable claims of First Amendment religious freedom and Fourteenth Amendment equal protection violations against Defendant Alameda County Sheriff's Office (ACSO). (Dec. 18, 2007 Order at 7-8.) However, the Court directed Plaintiff to name individual members from the jail staff and explain what each defendant did that caused a violation of his constitutional rights. (Id. at 8.) Additionally, the Court determined that Plaintiff presented a cognizable claim for the denial of due process against Defendant Correctional Officer Morrison and served him with a summons and complaint. (Id. 10-11.) The Court dismissed with leave to amend Plaintiff's claim of supervisory liability against Defendants Sheriff Charles Plummer and Sergeant Wolf for failure to state facts establishing their personal involvement in the alleged constitutional violation. (Id. at 8-9.) Further, the Court found that Plaintiff failed to state a cognizable claim under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), against the United States Marshall's Office, and dismissed that claim. (Dec. 18, 2007 Order at 3-4.) Finally, the Court also dismissed without prejudice all claims against the Doe Defendants and directed Plaintiff to file an amendment to the complaint to add them as named

Defendants once he learned their identities. (Id. at 8.)

On January 25, 2008, Plaintiff filed an amendment to the complaint.

On August 5, 2008, Defendant Morrison filed a motion for summary judgment.

In an Order dated February 25, 2009, the Court granted summary judgment as to all claims against Defendant Morrison.

In an Order dated August 31, 2009, the Court reviewed the amendment to the complaint, in which Plaintiff alleged that Defendants violated his right to free exercise of religion. Specifically, he claimed that they failed to grant his request for an "Islamic Diet," to provide an Imam to offer spiritual guidance, and to allow him to wear a Kufi prayer cap. Plaintiff also alleged that Defendants concluded Ramadan prematurely, denied him a special meal to celebrate Eid, and failed to deliver meals prior to sunrise in accordance with Ramadan custom. The Court found that Plaintiff's allegations stated cognizable claims of First Amendment religious freedom and Fourteenth Amendment equal protection violations against Defendants ACSO (municipal defendant) and Plummer (supervisory defendant). (Aug. 31, 2009 Order at 2-7.)

On December 4, 2009, Defendants moved for summary judgment on the grounds that evidence did not exist to support Plaintiff's municipal and supervisory liability claims. Defendants further argued that even if evidence existed to support Plaintiff's municipal and supervisory claims, their actions did not cause a violation of his constitutional rights.

Plaintiff's opposition was originally due on January 18, 2010 -- forty-five days after Defendants filed their motion. The Court, however, granted Plaintiff a total of five extensions to file his opposition, making it due no later than March 22, 2010. The Court did not receive Plaintiff's opposition on that date.

On March 31, 2010, the Court granted Defendants' motion for summary judgment. In its Order, the Court found that Defendants' actions did not violate Plaintiff's right to religious freedom or equal protection of the laws. (Mar. 31, 2010 Order at 10.) Upon finding no underlying violation, the Court did not address the merits of Plaintiff's municipal and supervisory liability claims against

2

Defendants ACSO and Plummer, respectively.  (Id.)

On April 5, 2010, the Court received Plaintiff's opposition.  In support of his opposition, Plaintiff attached the following documents: (1) Response to Defendants' Motion for Summary Judgment Objections (Objections); (2) Response to Captain James Ayala's Declaration in Support of Defendants' Motion For Summary Judgment (Resp. to Ayala); (3) Response to ACSO Chaplain Jennings's Declaration for Summary Judgment (Resp. to Jennings); and, (4) Declaration of Mr. Ilya Tuchinsky in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment (Tuchinsky Decl.).

The Court construes Plaintiff's untimely opposition and the supporting documents as a motion for reconsideration of its March 31, 2010 Order granting summary judgment.

For the reasons discussed below, the Court DENIES Plaintiff's motion for reconsideration.

**BACKGROUND**

In its March 31, 2010 Order, the Court summarized the factual background of this case, as to each claim:

> **[Denial of "Islamic Diet"]** - On April 25, 2005, Plaintiff filed a grievance after being told that the jail "no longer ha[d] [Islamic] diet." The Inmate Grievance Response dated May 14, 2005 states that his grievance was denied because the jail's food provider, Aramark Corporation, did not serve a dietary alternative referred to as an "Islamic Diet."  It states that Aramark provides an Ovo-Lacto Vegetarian alternative, which jail staff provides to inmates with religious dietary restrictions.  It further states that this Ovo-Lacto Vegetarian alternative meets the guidelines for Kosher and Halal meals, as well as those for inmates' dietary needs.
> . . . .
>
> On May 13, 2005, Plaintiff filed another grievance after being served a "'veggie diet' no meat'" dinner tray which he claimed to be an incorrect diet tray. The Inmate Grievance Response dated May 15, 2005 states that his grievance was denied because he was given the correct "Lactose Intolerant tray" to "accommodate [his] religious diet requirements."
>
> . . . .
>
> **[Receiving Meals After "Stop Eating" Times]** - On at least three occasions, Plaintiff was served breakfast after the "Stop Eating" times listed in the Ramadan Time Table for 2005. On October 21, 2005, the "Stop Eating" time was 6:00 a.m., but Plaintiff was served breakfast at 6:10 a.m. On October 31, 2005, the "Stop Eating" time was 5:11 a.m., but Plaintiff was served breakfast at 5:30 a.m. On November 2, 2005, the "Stop Eating" time was 5:13 a.m., but Plaintiff was

1  served breakfast at 5:40 a.m. The Ramadan Time Table for 2005 also lists the times for sunrise during the month of Ramadan. The posted times for sunrise on
2  the three occasions Plaintiff received his breakfast after the "Stop Eating" time are as follows: 7:22 a.m. on October 21, 2005; 6:32 a.m. on October 31, 2005; and
3  6:34 a.m. on November 2, 2005. On all three occasions, Plaintiff was served breakfast before actual sunrise.
4
   **[Concluding Ramadan Prematurely]** - Plaintiff alleges that on November 3,
5  2005 and November 4, 2005, he did not receive his morning meal in observance of Ramadan. He was "informed that Ramadan was officially over and that it had
6  ended on November 2, [20]05, according to a newly issued memorandum issued by one Sergeant Ary. . . ." The memorandum stated that "Ramadan will begin on
7  Tuesday, October 4, 2005 and concludes on Wednesday, November 2nd." However, the Ramadan Time Table for 2005, estimated that Ramadan concluded
8  on November 4, 2005.

9  . . . .

10  **[Denial of Special Meal of Eid]** - On November 6, 2005, Plaintiff requested a special meal to celebrate Eid at the end of Ramadan. Defendants denied Plaintiff's
11  request and informed him that such a celebration could be accomplished by prayer alone, and that a special meal or the sharing of gifts were not necessary.
12  Plaintiff was further informed that "[b]ecause of security and facility restraints, [jail] staff has never made special arrangements for the provisions of a special
13  meal or allowing the exchange of gifts between inmates."

14  **[Failure to Provide Imam]** - Plaintiff states that he "requested counseling by a spiritual leader or chaplain, which was not available, because the Alameda
15  [County] Sheriff['s] department has failed to contact religious leaders to participate in Islamic services, for the Muslims weekly Friday Islamic Service."
16  On April 25, 2005, Plaintiff filed a grievance claiming that there were "no Muslim services" at GDDF. Additionally, on July 10, 2005, Plaintiff filed
17  another grievance requesting "to work with somebody [at GDDF] to create some form of Islamic services." In response to Plaintiff's grievances, Defendants
18  repeatedly informed him that it had been unable to locate a qualified Imam who is willing and able to provide services at GDDF. The Inmate Grievance Response
19  dated July 15, 2005, states that there was a problem with securing an Imam to come to the jail because it was "a general consensus by Imams that when a
20  Muslim commits a crime or goes to jail he/she is considered an outcast from the church until they have repented their sins or crime."
21
   **[Denial of Kufi Cap]** - On July 10, 2005, Plaintiff requested certain items to
22  perform religious rituals, including a prayer rug, beads, oils, a Quran and headgear. Plaintiff was told that upon request, the jail provides a clean towel to
23  Muslims as a substitute for a prayer rug. Plaintiff was also provided a Quran and other Islamic prayer material. However, due to security concerns, Defendants
24  denied Plaintiff's request for beads, oils and headgear. At the time Plaintiff was housed at GDDF, the jail had a policy that prohibited all headgear due to security
25  concerns. Recently, the jail has changed its policy and now permits "inmates demonstrating a sincere belief in religion where headwear is customary [to] have
26  access to non-denominational headwear purchased by the ACSO."

27  (Mar. 31, 2010 Order at 4-8 (citations omitted).)

28

4

## DISCUSSION

### I. Legal Standard

Where the court's ruling has resulted in a final judgment or order (e.g., after summary judgment motion), a motion for reconsideration may be based either on Rule 59(e) (motion to alter or amend judgment) or Rule 60(b) (motion for relief from judgment) of the Federal Rules of Civil Procedure. See Am. Ironworks & Erectors v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001). "'[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir. 1970)).

A motion to alter or amend judgment under Rule 59 must be made within ten days of entry of judgment. See Fed. R. Civ. P. 59(e). However, a motion to vacate or dissolve an injunction based on changed circumstances is not subject to the ten day limit in Rule 59(e). Credit Suisse First Boston v. Grunwald, 400 F.3d 1119, 1125 (9th Cir. 2005). A motion for reconsideration under Rule 59(e) "'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the law.'" McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (citation omitted) (en banc). A district court does not commit clear error warranting reconsideration when the question before it is a debatable one. See id. at 1256 (district court did not abuse its discretion in denying reconsideration where question whether it could enter protective order in habeas action limiting Attorney General's use of documents from trial counsel's file was debatable).

For a motion for relief of a judgment, Rule 60(b) provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); School Dist. 1J v. ACandS Inc., 5 F.3d 1255, 1263 (9th Cir.1993). "Rule 60(b) [] provides a mechanism for parties to seek relief from a judgment when "it is no longer equitable that the judgment should have prospective

application," or when there is any other reason justifying relief from judgment. Jeff D. v. Kempthorne, 365 F.3d 844, 853-54 (9th Cir. 2004) (quoting Fed. R. Civ. P. 60(b)). Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret through second thoughts or subsequently-gained knowledge. Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1099 (9th Cir. 2006) (denying reconsideration to a party who had settled and then discovered that her attorney had made legal errors in advising her to settle).

Rule 60(b)(6) is a "catchall provision" that applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60. Samish Indian Tribe v. Washington, 394 F.3d 1152, 1157 (9th Cir. 2005). "It has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." Id. (internal quotations omitted). Thus, to reopen a case under Rule 60(b)(6), a party must establish "both injury and circumstances beyond his control that prevented him from proceeding in a proper fashion." Id. (internal quotations omitted); see, e.g., id. at 1160-61 (finding plaintiff entitled to relief under Rule 60(b)(6) because tribal non-recognition was an extraordinary circumstance beyond their control which prevented them from proceeding in proper fashion). Mere dissatisfaction with the court's order or belief that the court is wrong in its decision are not adequate grounds for relief. Twentieth Century - Fox Film Corp., 637 F.2d at 1341.

Here, the Court will analyze Plaintiff's motion for reconsideration under Rule 60(b).

**II.      Analysis**

     **A.      Municipal and Supervisory Liability Claims**

In the instant motion, Plaintiff alleges that Defendants failed to "correct a custom that has resulted in repeated 'constitutional violations' due to staff lack of training in 'religious affairs' or without reprimand." (Opp'n at 1.) Plaintiff also alleges that "Sheriff Plummer in his supervisory capacity did not interact to stop a wrong" and that he "fail[ed] to perform his fiduciary duties . . . allowing subordinates to breach memorandums [sic] contracts, or understandings with inmate's practicing their religious beliefs . . . ." (Objections at 3-4; Resp. to Ayala at 2.) Further, Plaintiff disputes Defendants' claim that Defendant Plummer did not work at GDDF during the time the

**United States District Court**
For the Northern District of California

1  alleged violations occurred.  He attempts to raise a triable issue of material fact by alleging that
2  Defendant Plummer, as the chief operating officer of ACSO, must have worked at GDDF and that
3  he was responsible for the policies and practices of ACSO.  (Resp. to Ayala at 2.)  Moreover,
4  Plaintiff names new defendants, including Captains Ahern and McCarthy (in their supervisory
5  capacity), Lieutenant Kosals, Sergeant Ensor, Sergeant Arys, Deputy Griffin, and Deputy Pires, as
6  well as "two other unknown agents."  (Objections at 4.)  He attempts to link them to his religious
7  freedom claim by alleging that they failed to "correct the wrong in grievances."  (Id.; Opp'n at 6;
8  Resp. to Ayala at 2.)  The Court will not consider Plaintiff's allegations against these newly-named
9  Defendants because his claims against these Defendants were not raised in the instant action.  Any
10 such claims against these Defendants can only be raised in a new civil rights action.

11  Additionally, the Court finds unavailing Plaintiff's attempt to raise triable issues of material
12 fact regarding his claims against Defendant ACSO in its municipal capacity or against Defendant
13 Plummer in his supervisory capacity.  In its March 31, 2010 Order, the Court did not reach the
14 merits of Plaintiff's municipal and supervisory liability claims upon finding that there was no
15 underlying constitutional violation.  (Mar. 31, 2010 Order at 10.)  Specifically, the Court stated,
16 "[e]ven if evidence existed to support Plaintiff's claims that Defendant ACSO and Plummer could be
17 liable as municipal and supervisory defendants, respectively, the Court finds that Defendants' actions
18 did not cause a violation of Plaintiff's right to religious freedom or equal protection of the laws . . . ."
19 (Id.)  As further discussed below, the allegations that Plaintiff now raises in the instant motion do
20 not support a reconsideration of the Court's finding that Defendants' actions did not violate Plaintiff's
21 constitutional rights.  Thus, any triable issue that Plaintiff attempts to raise with respect to his claims
22 of municipal or supervisory liability does not warrant a reversal of the Court's grant of summary
23 judgment.

24  **B.  Free Exercise Claim**
25  **1.  Denial of "Islamic Diet"**
26  In his complaint, Plaintiff alleged that Defendants denied him an "Islamic Diet" that
27 comports with the tenets of his religion.  Defendants presented evidence that Plaintiff was provided
28 with an "Ovo-Lacto Vegetarian alternative" that met the guidelines for both Kosher and Halal meals.

7

(Mar. 31, 2010 Order at 12.) The Court found that "[t]he evidence presented sufficiently proves that Defendants attempted to accommodate Plaintiff's dietary needs in accordance with the tenets of his religion; therefore, Plaintiff cannot prove that he was unreasonably denied such meals." (Id.)

In the instant motion, Plaintiff now alleges that Defendants denied him his "Islamic dietary needs" by placing him on a "lacto vegetarian diet." (Objections at 4-5.) Plaintiff claims that this diet failed to meet his dietary restrictions because he is "lacto entolerent [sic]." (Id.) He then states, "I was given a religious veggie diet without me requesting because of my medical condition." (Id. at 5.) Plaintiff alleges that he was placed on this diet involuntarily as "another act of retaliation." (Opp'n at 15.) Plaintiff's claim, however, appears to be based on his own misunderstanding of the Ovo-Lacto Vegetarian diet. This meal is, in fact, a "Lactose Intolerant" alternative. (Defs.' MSJ, Ayala Decl., Exs. 6, 8, 10.) Accordingly, the Court again finds that the Ovo-Lacto Vegetarian alternative adequately meets Plaintiff's religious needs and his personal dietary restrictions. Further, Plaintiff attempts to raise a new claim of retaliation that was not originally raised in the instant action. Such a claim, however, can only be brought in a new civil action.

### 2. Receiving Meals After "Stop Eating" Times

In the instant motion, Plaintiff claims that Defendants denied him over "10 days of 30 day fast." (Opp'n at 5.) According to Plaintiff, Defendants failed to serve his morning meals on the first three days of Ramadan: October 5, October 6 and October 7, 2005. (Id. at 3.) Additionally, Plaintiff claims that Defendants delivered breakfast after sunrise on the following days: October 12, 13, 21, and 31 as well as November 2, 2005. (Id. at 3-4.) Lastly, Plaintiff alleges that Defendants failed to provide meals on November 3 and 4, 2005, due to a memorandum stating that Ramadan ended on November 2, 2005, which Plaintiff alleges was incorrect. (Id.)

The Court finds that Plaintiff's claims do not warrant reconsideration. First, Plaintiff has not presented evidence that he has exhausted his claims regarding the denial of meals on the first three days of Ramadan. In fact, Plaintiff admits that he "wrote a 'message request' to Sgt. Ditzentserger who stated the problem shall be corrected on 10-5-05 but continued not feeding 2 more days, 10-6-05, 10-7-05 and again 10-12-05." (Id. at 3.) Plaintiff further admits that on "some days [he] didn't grieve the issues for staff was getting upset with [his] grievances" (Objections at 6.)

8

Therefore, Plaintiff should have first exhausted his claims through the proper grievance procedures before raising them in federal court.

Moreover, the Court notes that on October 21, 2005, Plaintiff filed a grievance claiming he did not receive his meals before sunrise on October 5, 12, 13, and 21, and that the Inmate Grievance Response related to this claim only addressed the failure to provide his meal on October 21. While the jail staff at GDDF may have failed to consider the other dates Plaintiff was allegedly denied meals, as mentioned above, he must nonetheless go through the proper grievance channels before raising such a claim in federal court.

Second, even assuming Defendants failed to provide meals in observance of the Ramadan custom on more than ten days, such instances are not sufficient to warrant reconsideration of the Court's rejection of this claim. A temporary denial of meals does not rise to a constitutional violation. See May v. Baldwin, 109 F.3d 557, 565-66 (9th Cir. 1997) (temporary denial of outdoor exercise and alleged denial of adequate food, water and sanitation did not rise to a constitutional violation). On October 21, 2005, the evidence shows that Plaintiff was served his morning meal at 5:42 a.m. and on that same day the "Stop Eating" time was 5:53 a.m. (Opp'n, Ex. 5.) Additionally, the evidence shows that on October 21, October 31 and November 2, Plaintiff received his meals after the "Stop Eating" times but before actual sunrise as indicated on the Ramadan Time Table for 2005.[1] (Mar. 31, 2010 Order at 6.) On these days, Plaintiff was not prohibited from participating in the mandates of his religion since he was able to consume his meals prior to actual sunrise in accordance with Ramadan custom.

Moreover, a temporary denial of meals does not amount to governmental conduct that prohibits Plaintiff from "participating in the mandates of his religion." Cf. Freeman, 125 F.3d at 737 (finding that shackling, requiring sign-in for services, abusive language directed at faith and failure to give notice allowing time for cleansing ritual did not prevent the inmate from participating in the mandates of his religion). Plaintiff was provided meals for the majority of the month of Ramadan with the exception of the aforementioned dates. Additionally, as the Court stated in its March 31,

---

[1] The Court notes that Plaintiff alleges that "the clocks [at the jail] were reset incorrectly." (Opp'n at 4.) However, Plaintiff has made a conclusory statement, which he has not supported with evidence from the record.

9

1  2010 Order, Plaintiff had alternative means of accessing food in observance of Ramadan. Plaintiff
2  does not dispute this contention in his opposition. Thus, Defendants did not prohibit Plaintiff from
3  participating in the mandates of his religion by failing to deliver his morning meals before the "Stop
4  Eating" times. Therefore, Plaintiff's claims do not warrant reconsideration on this issue

### 3.  **Concluding Ramadan Prematurely**

In his complaint, Plaintiff alleged he was denied his morning meals on November 3 and 4, 2005, due to a memorandum issued by Sergeant Ary, which stated that Ramadan ended on November 2, 2005. Plaintiff claimed that the memorandum prematurely concluded Ramadan, thus preventing him from receiving his meals on November 3, 2005 and November 4, 2005. Defendants alleged that the time-line listed on the Ramadan Time Table for 2005 was incorrect as it spanned thirty-one days, a longer duration than a lunar month upon which the month of Ramadan is based. (Mar. 31, 2010 Order at 7.) In the instant motion, Plaintiff attempts to raise a triable issue of material fact by claiming that Ramadan ended on November 4, 2005 because "Ramadan last 30 day [sic]" but ends on the "first citing of the new moon." (Opp'n at 10; Resp. to Ayala at 4.) Plaintiff also claims that Sergeant Ary created the memorandum to "cover wrongs." (Objections at 7.) He states that the "wrongful memorandum was created to umbrella the effects from unexpected daylight savingtime [sic], were [sic] no officer was made available to perform kitchen dutys [sic] for Ramadan as planed [sic] in Ramadan Time Table . . . ." (Opp'n at 4.)

The Court finds Plaintiff's claims unavailing. In the March 31, 2010 Order, the Court found that Defendants made a "reasonable and legitimate effort to begin and to end Ramadan at the appropriate time for Oakland, California." (Mar. 31, 2010 Order at 14.) Moreover, the Court stated, "even assuming Ramadan ended on November 4, 2005 as stated in the Ramadan Time Table for 2005, the Court finds that a mistaken denial of two meals does not rise to a constitutional violation." (Id. (citing May, 109 F.3d at 565-66).)

The Court conducted its analysis already assuming the truth of Plaintiff's allegations and nevertheless found that no violations occurred by the mistaken denial of meals on November 3 and 4. Therefore, Plaintiff's claim that Ramadan ended on November 4, 2005, does not warrant reconsideration on this issue.

10

### **4.     Denial of Special Meal for Eid**

In its Order, the Court found that Defendants' refusal to provide Plaintiff with the special meal for Eid was not a violation of his right to religious freedom. (Mar. 31, 2010 Order at 15.) First, the Court stated that Plaintiff "failed to provide evidence that a special meal is a mandate of his religion in order to celebrate Eid that cannot be accomplished through other means." (Id.) Second, the Court found that even assuming that the special meal for Eid was a mandate of Plaintiff's religion, Defendants' refusal to provide a special meal was not a violation of his right to religious freedom under Turner v. Safley, 482 U.S. 78, 89 (1987).

A restriction on an inmate's First Amendment religious rights is valid if it is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89). The burden is on the prison officials to prove that the restriction of the prisoner's exercise of religion was reasonably related to a legitimate penological objective. See Ashelman v. Wawrzaszek, 111 F.3d 674, 677-78 (9th Cir. 1997) (applying test from O'Lone and Turner to determine reasonableness of decision denying Jewish prisoner's request for an all-kosher diet). In making such a determination, the court should consider four factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and the governmental objective itself must be a legitimate and neutral one. A second consideration is whether alternative means of exercising the right on which the regulation impinges remains open to prison inmates. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987) (citing Turner, 482 U.S. at 89-91).

In its March 31, 2010, the Court found in applying the Turner factors that "Plaintiff was denied the special meal for Eid due to security and facility restraints." (Id.) However, in the instant motion, Plaintiff disputes these claims, stating that "[i]f the ACSO has never alloud [sic] 'special meals' how can it be a security risk" and that ACSO "offers special meals to the cleanest housing floor every week from 'Aramark' Corporation if you can afford it." (Opp'n at 4.) Plaintiff further alleges that Eid is "one of two major religious observances in Islam" and therefore Defendants' denial of the special meal for Eid constituted a "substantial burden for purposes of 'RLUIPA.'" (Id. at 7.)

11

The Court finds that Plaintiff's claims do not warrant reconsideration on this issue. Although Plaintiff has admitted that Eid is a "major religious observance[]," the Court again notes that he has not alleged that Eid is mandated by his faith.  Nor has Plaintiff alleged that Eid can only be celebrated with a special meal and not by other means like prayer alone.  Additionally, Plaintiff has offered no evidence in the instant motion disputing the budgetary and facility restraints placed on Defendants if they were to provide Plaintiff with a special meal for Eid.  Although Plaintiff contends that ACSO does offer "special meals," he admits that such meals are provided to only those inmates who can "afford it."  Plaintiff does not address whether Defendants are required under the First Amendment to provide a free, special meal for Eid to all Muslim inmates.  Lastly, Plaintiff's claim that a failure to provide a special meal for Eid (once a year) is a violation of his rights under the Religious Land Use and Institutionalized Person's Act (RLUIPA).  However, because he did not originally include this claim in the instant action, it can only be raised in a new action.

### 5. **Failure to Provide Imam**

The Court found that Defendants failure to provide an Imam did not deny Plaintiff all means of religious expression.  Specifically, the Court stated, "Defendants did not necessarily deny Plaintiff an Imam, but rather, their failure to provide one was due to the practical hardships in locating an Imam willing to provide services at GDDF." (Mar. 31, 2010 Order at 16.)  Further, the evidence in the record showed that Defendants provided a chaplain to meet Plaintiffs spiritual needs.  (Id. at 16.)

In the instant motion, Plaintiff appears to be alleging that the jail staff violated ACSO's policy by asking for only a "certified imam" when ACSO's policy requires a "clinical pastoral education or equivalant [sic] training." (Opp'n at 3.)  Additionally, Plaintiff claims that the chaplain is not "capable of establishing Islamic point of views." (Resp. to Jennings at 1.)  The Court finds Plaintiff's claims unavailing.  Defendants' failure to provide an Imam did not prevent Plaintiff from exercising his religious faith.  Aside from Plaintiff's conclusory assertions that a chaplain cannot provide adequate spiritual guidance to Muslim inmates, Plaintiff has offered no evidence that he was denied spiritual guidance altogether.  In fact, based on the evidence in the record, the Court

12

United States District Court
For the Northern District of California

1  found that Plaintiff had participated in non-denominational religious services in the past. (Mar. 31,
2  2010 Order at 17.)  Plaintiff does not dispute this contention.
3       The Court further notes that Plaintiff filed a response objecting to Chaplain Jennings'
4  declaration on the grounds that Chaplain Jennings did not work at GDDF in 2005 and only started
5  working there in 2007.  Specifically, Plaintiff states that Chaplain Jennings "had no interactions
6  with [him] in 2005 to form any kind of 'personal knowledge' towards [Plaintiff]."  (Resp. to
7  Jennings at 1.)  Plaintiff further alleges that because Chaplain Jennings did not work at GDDF in
8  2005, his declaration should not be admitted into evidence.  (Id. at 3.)  Plaintiff's claims are without
9  merit.  Chaplain Jennings' declaration in support of Defendants' motion for summary judgment
10 described the role of the GDDF chaplain, ACSO's policy and practices on religious services, and
11 dietary alternatives at GDDF.  (Defs.' MSJ, Chaplain Jennings Decl. 2-13.)  Nowhere in the
12 declaration did Chaplain Jennings discuss Plaintiff's specific circumstances; nor did the Court issue
13 its decision solely based on the statements made by Chaplain Jennings.  Rather, the Court found
14 that Defendants were faced with the practical hardship of finding an Imam willing to provide
15 services at GDDF, and that Plaintiff was not denied all religious expression since a chaplain was
16 available to offer spiritual guidance.
17             **6.   Denial of Kufi Cap**
18       The Court found that a denial of a Kufi cap did not rise to a constitutional violation under
19 Turner.  In applying the Turner factors, the Court concluded that the denial of a Kufi cap is
20 reasonable related to the security concerns; second, nothing in the record showed that Plaintiff was
21 prevented from practicing his religious beliefs by using other religious items that jail staff provided,
22 i.e., Quran and a prayer rug; third, a denial of a Kufi cap was related to the need for uniformity at
23 GDDF; and finally, the Court found that there were no ready alternatives to the regulation
24 prohibiting religious headwear for all inmates.  (Mar. 31, 2010 Order at 18-19.)
25       In the instant motion, Plaintiff does not dispute the aforementioned concerns.  Rather,
26 Plaintiff states "I truly believe as a Muslim 'it's God's order' to be know [sic] as a Muslim by
27 wearing a Kufi . . . ."  (Opp'n at 13.)  Plaintiff's statement indicates that it is his belief that Kufi caps
28 are mandated by his religion.  However, even assuming that Kufi caps are mandated by his religion,

13

the Court still finds that Defendants' denial of the kufi cap was reasonable related to legitimate penological concerns previously addressed in its March 31, 2010 Order. Finally, Plaintiff claims that the denial of a Kufi cap is a violation of his rights under RLUIPA. However, once again, this a claim that can only be raised in a new action because it was not originally raised in the instant action.

Therefore, Plaintiff's claim -- that Kufi caps are mandated by his religion -- does not warrant reconsideration on this issue.

### C. Equal Protection Claim

The Court found that Plaintiff had not established a prima facie case of discrimination against his religion based on the denial of his request for a Kufi cap. Defendants presented evidence showing that GDDF did not have a policy or custom of permitting Jewish inmates to wear yarmulkes while prohibiting Muslim inmates from wearing Kufi prayer caps. When the Court granted summary judgment, it found that Plaintiff had not produced any evidence indicating that Defendants harbored a discriminatory intent in denying him a Kufi cap. (Mar. 31, 2010 Order at 20-21.)

In the instant motion, Plaintiff attempts to raise a triable issue of material fact by alleging that Defendant ACSO violated their "own policy" by denying Muslims while "allowing Jews to wear religious headwear" and that Defendant ACSO "show[ed] a 'deliberate indifference' knowingly by changing [their] policy . . ." (Objections at 3.) Plaintiff claims that the jail staff denied Plaintiff a right to wear religious headwear for security reasons, while allowing a Jewish inmate religious headwear the following month. (Opp'n at 7.) To support his claim, Plaintiff has attached the declaration of Mr. Ilya Tuchnisky, a fellow inmate, who claims that Defendants permitted him to wear a yarmulkes during service and that his rabbi was allowed to "enter the facility with the 'yarmulkes' for [ ] services without any objections . . ." (Tuchinsky Decl. at 1.)

Further, Plainitff attempts to argue that Defendants possessed a discriminatory motive in denying him a Kufi cap. Specifically, he states that the "repeated negligent actions against inmates practicing 'free exercise' of there religion 'Islam' brings a question marked to discrimination where the same actions occur over and over year after year without reprimand." (Objections at 8.)

14

The Court finds that Plaintiff does not allege any facts that warrant a reconsideration on this issue. First, it is unclear from Mr. Tuchinsky's declaration whether he was allowed to wear a religious head piece during the relevant period in 2005, or whether he was allowed to wear it after Defendants changed their policy to allow non-denominational headgear. Even assuming Mr. Tuchinsky was permitted religious headwear during the same period that Plaintiff was denied his Kufi cap, Plaintiff has not demonstrated that Defendants had a discriminatory motive in denying him a Kufi cap. Aside from Plaintiff's blanket assertion that Defendants' actions have occurred "year after year," he has not presented any evidence that other Muslim inmates requested Kufi caps and that Defendants harbored a discriminatory intent in denying them Kufi caps. As the Court found in its March 31, 2010 Order granting Defendants' summary judgment, there are many penological justifications for denying Plaintiff a Kufi cap, primarily the need for uniformity within GDDF as well as other security concerns.

Secondly, the Court finds unavailing Plaintiff's claim that the policy change allowing religious headgear constitutes evidence which will prove a First Amendment violation by Defendants prior to the change. See Fed. R. Evid. 407 (subsequent remedial measures are not admissible evidence of culpable conduct). Moreover, Defendants do not concede to a violation prior to the policy change.

Finally, to support his equal protection claim, Plaintiff attempts to add various new claims that were not previously raised in his complaint. Plaintiff alleges that in 2009, Chaplain Jennings allowed him to "meet a 'Muslim volunteer' who stated Muslims have a hard time trying to gain entrance to GDDF" and that they "must go through 'Christian training' before they can enter." (Opp'n at 2; Resp. to Jennings at 2.) Plaintiff also claims that "[t]here is still no form of prayer services for 'Muslim' nor are the Muslims alloud [sic] to gather for 'congregational prayer.'" (Resp. to Jennings at 2.) Plaintiff further states that "other religions have services 5 days a week by contractors, and volunteers" while Defendants have "yet to establish Islamic service since it opened." (Id. at 2.) These new claims, however, are entirely unrelated to Plaintiff's original equal protection claim based on the denial of a Kufi cap. Therefore, these new claims can only be raised in a separate civil action.

### D. Summary

In sum, the Court finds that Plaintiff's allegations in his motion for reconsideration fail to warrant a reversal of its March 31, 2010 Order granting summary judgment in Defendants' favor. First, the Court finds that Plaintiff was placed on an adequate dietary alternative that met his religious restrictions and his dietary needs. Second, the Court finds that even assuming Defendants denied Plaintiff his morning meal in observance of Ramadan on ten separate occasions, these occurrences do not rise to a constitutional violation because Plaintiff was neither prohibited nor prevented from participating in his religion. Third, the Court finds that Defendants made a good faith attempt in estimating when the month of Ramadan started and ended, and the denial of two meals does not amount to a First Amendment violation. Fourth, Plaintiff has not offered any evidence that a special meal for Eid is mandated by his religion and that Defendants were obligated to provide such a meal. Fifth, Defendants' failure to provide an Imam was due to the practical hardships in finding an Imam who was willing to offer services at GDDF; nonetheless, a chaplain was available to offer Plaintiff spiritual guidance. Finally, Plaintiff failed to present evidence that Defendants harbored a discriminatory motive when denying his request for a Kufi cap.

Accordingly, Plaintiff's motion for reconsideration is DENIED. Furthermore, as mentioned above, the Court may not consider any new claims included in his motion because they were not originally raised in the instant action. Such claims can only be raised in a new action.

### CONCLUSION

For the foregoing reasons, Plaintiff's untimely opposition to Defendants' motion for summary judgment is construed as his motion for reconsideration, and the Court DENIES his motion.

IT IS SO ORDERED.

DATED: 4/23/10

*Saundra B Armstrong*

SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.06\Sandeford6794.denyRECONS.wpd   16